# Cobleigh's Estate.

*Sale—Orphans' court sale—Decedent's estates—Setting aside sale.*

An executor will not be compelled by a decree of the orphans' court to execute a deed for real estate of the testator sold by him, where it appears that some of the devisees agreed with the other devisees that the property should not be struck off below a certain price, and that the crier disregarded this understanding and sold the property at a lower price to some of the parties to the agreement.

Argued Jan. 19, 1903. Appeal, No. 40, Jan. T., 1903, by Edward Farr, executor, from decree of O. C. Lackawanna Co., No. 165, Series C, compelling executors to execute a deed for real estate in estate of Margaret Cobleigh, deceased. Before BEAVER, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Petition for decree to compel executor to execute a deed of real estate. Before VOSBURG, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the decree requiring executor to execute deed.

*H. M. Hannah*, with him *W. Gaylord Thomas*, for appellant.— It is a well established principle of law that ratification must occur with a full knowledge of the rights of the one who ratifies. He must know that without the ratification he would not be bound : Pittsburg, etc., R. R. Co. v. Gazzam, 32 Pa. 340 ; Johann v. Inman, 17 Legal Int. 190.

*James E. Watkins*, with him *M. J. Martin*, and *Joseph O'Brien*, for appellee.—Without the permission of the devisees

the sale could not have gone on, if they had any valid reason for stopping it, but the title is now sold out and out with their consent to the sale, and no valid objection to it can be conceived inasmuch as no person is injured by the transaction: Gast v. Porter, 13 Pa. 533.

The executor is not in a position at this time to oppose the deed, since no one in interest asks for a resale of the property or tenders security that a higher price will be bid at a resale of the property : Murphy's Estate, 11 W. N. C. 419.

Neither will the court interfere with the exercise by an executor of any discretionary power to sell real estate unless fraud, or a reckless and unwise exercise of the power be shown : Morris's Estate, 16 Phila. 344.

OPINION BY W. D. PORTER, J., October 5, 1903 :

The will of the decedent devised all her real estate as follows : "to my son, Elias J. Thomas, my stepson, John H. Powell, and my daughters, Mary Jane Griffiths, Elizabeth Davis, Katie Powell, and my sons, Thomas J. Powell and David Powell, in equal parts, share and share alike. The said devisees to be allowed to hold the said real estate as tenants in common and to enjoy the rents thereof, if this be agreed upon by all, otherwise, the same shall be sold at public sale by my executor, and the proceeds to be divided as above directed." The devisees do not seem to have been able to agree among themselves as to the management of the property, and the executor advertised it for sale. The sale was public, and the crier, the gentleman who was also counsel for the executor, knocked the property down to John E. Evans, who acted for his wife, formerly Katie Powell, Thomas J. Powell, David Powell and Samuel Powell, four of the devisees, at the price of $6,300. All of the devisees not joining in the purchase, then and there objected to the sale and declared it invalid. A petition was subsequently presented to the orphans' court, asking that the executor be ordered to execute and deliver a deed to the alleged purchasers, in accordance with the terms of the sale. The executor filed an answer to this petition, setting forth his reasons for declining to comply with the terms of the alleged sale and execute and deliver a deed. Testimony was taken on behalf of the several parties in interest, all the devisees who were not pur-

chasers appearing and opposing the making of a decree for the execution of the deed. The evidence established, without any suggestion of contradiction, that the crier had been instructed not to sell the property for less than $8,000, and to adjourn the sale unless there was a bid to that amount, and that without explanation or excuse he violated those instructions in knocking the property down for $6,300. The executor at once publicly declared that it was no sale, but upon being advised by his counsel, who was also the crier, that the sale was valid and binding, he accepted the note of the purchasers for that part of the purchase money, which ought to have, according to the terms of the sale, been paid in cash. The executor, as soon as he had had an opportunity to consult other counsel, declined to complete the transaction and tendered back the note. There was evidence that there had been a distinct and explicit agreement among all the devisees, prior to the sale, that those who subsequently became the purchasers would pay $8,000 for the property, and that unless that figure was reached, there should be no sale.

The learned judge in the court below held that although the crier had struck the property off in violation of his instructions, the executor having subsequently accepted a note, instead of the cash payment, had ratified the unauthorized act and was bound by it. The matter was treated in the court below as one involving only the rights of the executor and the purchasers, without regard to the rights of those devisees who were not purchasers. The learned judge in giving his reasons for the conclusion reached, said: " But it is said, the other devisees have been defrauded by this transaction, and they should be protected in this proceeding. This brings us to a question of remedies, as well as of rights. Is this refusal to deliver a deed to the purchasers the proper remedy, even assuming that there has been such fraud upon the part of the purchasers as would deprive them of any of the advantages of their purchase, which I do not now decide? As between the purchasers and the executor, representing the estate, the purchasers are entitled to receive the deed, because they were the highest bidders at the sale, the property was struck down to them, he accepted their note for the down payment and they have tendered the full purchase price. If the other devisees

were allowed to assert any rights by intervention in this pro-
ceeding, we would be trying a collateral issue, which it seems
to me does not properly arise. . . . I have purposely refrained
from expressing any opinion as to the merits of the controversy
between the devisees, as I do not feel that it can be legally and
properly adjusted in this proceeding." The order of the court
below has taken out of the hands of this trustee the title to this
land without regard to the rights of those who were to receive
the proceeds of the sale, and without considering the evidence
which tended to establish that through the instrumentality of
the sale, some of the devisees perpetrated a fraud upon their
codevisees. Had the court below considered the evidence and
passed upon the facts, we might not have been disposed to
disturb the conclusion, which, after such consideration, was
reached. The devisees who were not purchasers objected in
the court below, and are here appealing from the order. They
were the real owners of the property, being entitled to the pro-
ceeds of the sale, and had an interest which entitled them to
a hearing. The petitioners appealed to a court of equity, and
if it appears from the evidence that in attaining the position
which they now occupy, they committed a fraud upon their
codevisees, they cannot be permitted to acquire by it the ad-
vantage which even a nominal title to the land would give.
When the orphans' court is asked to assist in the perpetration
of a fraud, it is not required to blindly give its aid and let the
parties seek justice in the common pleas. The court below
having declined to consider the testimony as to the negotiations
between the several devisees prior to the sale, and the rights
of the nonpurchasing devisees thereunder, that duty has de-
volved upon us. We have carefully considered the evidence
and are led to the conclusion that the decree of the court below
was erroneous. The property seems to have been worth at
least $8,000. While a sale will not be set aside for mere
inadequacy of consideration, the fact that the consideration is
inadequate will be considered in connection with any circum-
stances establishing fraud or overreaching upon the part of the
purchasers. The evidence in this case clearly establishes, prac-
tically without contradiction, that prior to the sale there had
been a meeting at which the executor and all the devisees were
either present or represented, when it was agreed upon by all

that the property should not be sold for less than $8,000; that if there was no bid for that amount, the sale should be adjourned, and those who are now the petitioners to have the alleged sale consummated agreed at that meeting that they would pay $8,000 for the property. Samuel Powell, one of the alleged purchasers, testified with regard to this agreement among the devisees as follows :-

" Q.  Was there anything said to Mrs. Griffiths about it? A. We agreed to give a certain price.   Q. What was that price? A. First it was $7,000.   Q. When was that ?   A. Before the sale.   Q. Was there not an offer also of $7,500 ?   A. Yes, sir. Q. Who made that ?   A. That was our final offer, and we agreed we thought it would surely go up to $7,000, or $8,000. Q. And you agreed that if they did not attend, there would be no sale, and you would pay $7,500 ?   A. Yes, sir, exactly."

Mrs. Griffiths is one of the devisees who now objects to the consummation of the alleged sale.   The manifest result of this agreement was to throw off their guard the devisees who did not intend to purchase for themselves.   Relying upon this agreement, they naturally made no effort to induce others to bid.   Being told that if they did not attend there would be no sale, unless the property was bid up to $8,000, and that then those who now demand the property at the price of $6,300 would pay for it $7,500, the nonpurchasing devisees had a right to rely upon that agreement and were lulled asleep.   When the crier violated his instructions and declared the property sold at $6,300, the nonpurchasing devisees were taken completely by surprise, and at once objected.   The insistance of the petitioners upon the consummation of this sale is a violation of their own express agreement, a breach of good faith, inequitable and unjust.

The decree of the court below is reversed, and it is ordered that appellees pay the cost in the court below and upon this appeal.